IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DENNIS VAN CAMP,

                              Petitioner,

       v.                                                  OPINION & ORDER

DENISE SYMDON,[1]                                          14-cv-230-jdp

                              Respondent.

---

Petitioner Dennis Van Camp, a former state of Wisconsin prisoner currently on extended supervision, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Van Camp challenges state court convictions in Brown County Case No. 2008CF694 for possession of cocaine with intent to deliver, second or subsequent offense; possession of an electric weapon; possession of cocaine, second or subsequent offense; and possession of drug paraphernalia in Brown County Case No. 2008CF694. Van Camp contends that appellate counsel was ineffective by failing to argue: (1) substantive aspects of entrapment law; (2) the proper jury instruction on entrapment; (3) the admissibility and chain of custody of the cocaine; and (4) whether Van Camp actually violated the statute against possession of an electric weapon. The petition is fully briefed and ready for decision. After considering the parties' submissions and state court records, I conclude that Van Camp has failed to show that the Wisconsin Court of Appeals unreasonably applied federal law in analyzing the first three grounds. I conclude that Van Camp's claim about the electric weapon charge is procedurally defaulted, and that the

---

[1] I have amended the caption to name as the respondent the official in charge of the probation agency. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts and 1976 Advisory Committee Note.

claim would be meritless even if he had properly raised it to the Wisconsin courts. Therefore, I will deny the habeas petition.

FACTS

The following facts are drawn from the petition, briefs, and state court records.

**A.  Events underlying the conviction**

In July 2008, petitioner Dennis Van Camp was the subject of a "reverse sting" operation by the Brown County Drug Task Force. A confidential informant for the task force contacted Van Camp about purchasing a quarter kilogram of cocaine. At Officer Michael Wanta's instruction, the informant set up a meeting with Van Camp in a Green Bay parking lot.

Wanta provided the informant with a package containing approximately 250 grams of cocaine and equipped him with a recording device. The police put six pieces of cocaine from a previous drug conviction together to create a 250-gram "block," which is the weight Van Camp had agreed to purchase. The informant drove to meet Van Camp, waited ten minutes for Van Camp to arrive, and then entered the passenger seat of Van Camp's SUV. Van Camp provided $5,500 in cash in exchange for the cocaine. Immediately after the informant completed the deal and left the SUV, police arrested Van Camp. Police recovered the block of cocaine in Van Camp's SUV, and also discovered five small baggies of what field tests determined was cocaine, which would be confirmed by tests at the state crime lab. Officers weighed the baggies in the field and recorded the weights as 1.8 grams, 3.38 grams, 1.07 grams, 1.29 grams, and 1.19 grams. The state crime lab recorded the weights as .94 grams, 1.04 grams, 1.02 grams, 1.06 grams, and 1.18 grams, respectively.

Police also recovered an electric weapon from Van Camp's SUV. Van Camp was charged with possession of more than 40 grams of cocaine with intent to deliver, possession of cocaine, possession of an electric weapon, and possession of drug paraphernalia.[2]

**B.  Trial**

At the jury trial, the government introduced the block of cocaine and the cocaine baggies, among other evidence. Van Camp challenged this evidence at trial. He sought to discredit both the block and baggies of cocaine on chain-of-custody and authenticity grounds, arguing that the cocaine at trial was not the substance he was sold. He asserted that the texture of the cocaine block was different than what he was sold and that six pieces of cocaine could not be combined into one block. Also, the cocaine weighed 252 grams when first obtained by the government in 2004, but after the sting operation, the cocaine weighed about 249 grams. Similarly, Van Camp argued that the cocaine baggies at trial could not be the baggies recovered from his SUV because of the documented weight differences.

Van Camp sought a custom jury instruction regarding the importance of the chain-of-custody for a drug like cocaine, arguing that one piece of cocaine could be scientifically indistinguishable from another piece, and one must depend on visual descriptions and weights to distinguish them. The trial court rejected the requested instruction but permitted Van Camp to argue the chain of custody to the jury, and his trial counsel argued about the importance of the weight differences in closing arguments.

---

[2] Van Camp was also charged with possession of THC, but that charge was dismissed and is not the subject of this habeas petition.

Van Camp also relied on an entrapment defense. He asserted that the informant, acting as a government agent, contacted him excessively via telephone. Van Camp argued that he initially did not want to purchase the cocaine, but the informant convinced him to do it. Van Camp used his phone records to show that the informant called him several times, which Van Camp contended showed that he was not predisposed to purchase cocaine. The records were admitted into evidence and published to the jury, but the court declined to send the records to the jury during deliberations. The trial court submitted the question of entrapment to the jury using Wisconsin's pattern jury entrapment instruction.

Van Camp also sought the admission of his medical records to show that he had been shot in the head approximately ten years prior, in an effort to show that his hearing was compromised, and that he had temporary "swimmer's ear" in his left ear, which also hampered his hearing and cognitive functioning. The trial court deemed the medical records irrelevant, but allowed Van Camp to testify regarding his hearing loss and swimmer's ear and its impact on the night of the cocaine deal. A doctor treating Van Camp's ear also testified.

The jury found Van Camp guilty on all counts.

## C.  Direct appeal

On direct appeal, counsel's argument and the court of appeals analysis focused on whether the trial court abused its discretion when it denied Van Camp's request for a special chain-of-custody jury instruction. The court of appeals determined that the trial court did not abuse its discretion in refusing to instruct the jury on chain of custody in the manner requested by defense counsel. Rather, the court of appeals determined that the trial court adequately instructed the jury with the instruction on the state's burden of proof, beyond a reasonable doubt on every element including that actual cocaine was possessed. It also noted

that the trial court allowed defense counsel to argue the chain-of-custody issue to the jury. Van Camp's petition for review to the Wisconsin Supreme Court was denied.

## D. Postconviction motion

Following Van Camp's unsuccessful appeal, he filed a motion for postconviction relief on the basis of ineffective assistance of counsel. Van Camp argued that appellate counsel was ineffective for focusing on the chain-of- custody instruction while failing to argue that:

- the trial court gave the incorrect entrapment jury instruction;

- the state did not prove that Van Camp was predisposed to commit the crime;

- the telephone logs showed that the government excessively induced Van Camp as a matter of law;

- the medical records would have shown Van Camp did not have intent to deliver;

- the chain of custody of the cocaine was deficient and therefore inadmissible; and

- the cocaine in Van Camp's possession was improperly admitted because there were discrepancies in reported weights.

The trial court dismissed the postconviction motion without a hearing.

## E. Appeal of postconviction motion

Van Camp appealed the dismissal, raising the following ineffective assistance issues about entrapment: (1) he was not predisposed to purchase cocaine, because the medical records showed that he needed the cocaine for personal use, not for dealing, and he would not have purchased the cocaine if the criminal informant had not urged him over the phone; (2) the trial court wrongly used a subjective test of entrapment rather than an objective test; and (3) the trial court issued an outdated entrapment jury instruction that misstated the defendant's burden of proof.

5

Van Camp also argued that appellate counsel was ineffective for not properly challenging the admissibility and chain of custody of the cocaine. Van Camp argued the cocaine should not have been admitted because the prosecution could not reliably establish the chain of custody linking the substance at trial to the substance sold to him. Similarly, Van Camp also argued the cocaine baggies should not have been admitted because of the discrepancies between the weights measured by the officers compared to the weights established by the crime lab.

The court of appeals rejected all of Van Camp's claims of ineffective assistance of counsel. On the issue of predisposition, the court reasoned that the jury heard the testimony relating to the contents of the phone calls, saw the phone records and summaries of the phone records, and heard Van Camp's testimony about his medical condition, but that the jury, by virtue of its guilty verdict, weighed the evidence and rejected the notion that Van Camp was not predisposed to purchase cocaine. The court rejected Van Camp's proposed objective test for entrapment, and determined that Wisconsin uses a subjective test. Further, the court determined that the trial court used the current pattern instruction on entrapment, the pattern instruction was a correct reflection of the law, and the judge correctly instructed the jury on Van Camp's burden for showing entrapment. Finally, the court rejected Van Camp's argument that the cocaine was inadmissible because of the questions about weight and chain of custody. The court determined that the government had sufficient evidence of the chain of custody to admit the cocaine, and that Van Camp's issues went to the weight of the evidence.

Van Camp's petition for review to the Wisconsin Supreme Court was denied.

6

ANALYSIS

The arguments raised in Van Camp's petition and materials in support do not easily map onto the four grounds for relief listed in his petition. In my January 7, 2015 Rule 4 order, I construed his petition to raise the following issues in the context of an ineffective assistance of appellate counsel claim: (1) the trial court used the wrong standard of entrapment and misapplied the law; (2) the trial court gave the wrong entrapment jury instruction and imposed too high of a burden on Van Camp as a result; (3) the trial court incorrectly admitted the cocaine when proper chain-of-custody showings were not made; and (4) the trial court incorrectly convicted Van Camp of possession of an electric weapon when Van Camp legally possessed the weapon.

This court has authority to issue habeas corpus relief under 28 U.S.C. § 2254 to persons incarcerated or otherwise subject to state custody. Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard places a high burden on the petitioner. *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013) ("This standard . . . is 'difficult to meet.'" (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011))). "Clearly established law" must be set out in the holdings of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). "[A]n 'unreasonable application of' those holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Id*. (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)).

Rather, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The relevant decision in this case is the Wisconsin Court of Appeals's opinion affirming the denial of Van Camp's postconviction motion. *See Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006) ("The relevant state court decision is that of the last state court to address the claim on the merits.").

The Wisconsin Court of Appeals identified the two-part test used by the United States Supreme Court for reviewing ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, a criminal defendant seeking to prove ineffective assistance of counsel must establish deficient performance and resulting prejudice. *Id*. at 690-92. To show deficient performance, a defendant must point to specific acts or omissions that were "outside the wide range of professionally competent assistance." *Id*. at 690. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The right to effective assistance of counsel extends to appellate counsel. *McCoy v. Court of Appeals*, 486 U.S. 429, 436 (1988).

"[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). This standard is "doubly deferential" on habeas corpus review. *Id.*; *see also Richter*, 562 U.S. at 105 (emphasizing that the standards created by *Strickland* and § 2254(d) are "highly deferential" and "'doubly' so" when applied in tandem (citations omitted)).

8

Consequently, my task is not to independently conduct a *Strickland* analysis to Van Camp's case. Instead, I must determine whether the Wisconsin Court of Appeals reasonably applied *Strickland* to Van Camp's claims that his appellate counsel was ineffective.

## A.  Substantive law of entrapment

Van Camp contends that appellate counsel was ineffective for failing to argue that Van Camp proved entrapment as a matter of law at trial. I take him to be arguing, in essence, two theories. First, that counsel should have argued that the trial court should have used an objective entrapment test that examines only the police actions used to induce Van Camp to commit the crime, as opposed to the subjective test used by the trial court, which also took into account Van Camp's state of mind. Second, he argues that even under a subjective entrapment test, appellate counsel should have argued that he was not predisposed to commit the crime as a matter of law.

### 1.  Objective standard of entrapment

Van Camp contends that entrapment needs to be shown by an objective standard, under which only police conduct matters. Van Camp argues that the state's "illegal act" of selling him cocaine through the reverse sting operation is sufficient to show that he was entrapped as a matter of law. The trial court did not use an objective standard. Van Camp relies on a United States Supreme Court case in support of his contention that this "objective" test should be used. *United States v. Russell*, 411 U.S. 423 (1973). In *Russell*, the Court rejected a court of appeals analysis that used "an unmanageably subjective standard," but it did not go so far as to embrace an objective standard. *Id.* at 435. Van Camp cites *State v. Kummer*, a North Dakota Supreme Court case, to support the contention that the trial court should have used a "per se" analysis under which it is entrapment if the government

supplies the drugs in a sting operation. 481 N.W.2d 437 (N.D. 1992). He also identifies several other non-Wisconsin state cases that use some form of objective test. According to Van Camp, the trial court should have determined that the police conduct alone—contacting Van Camp ten times over four days through the informant and illegally selling him cocaine—was entrapment.

The court of appeals determined that counsel was not ineffective for failing to argue that Van Camp was entrapped as a matter of law because Van Camp's proposed objective standard is simply not Wisconsin's law. *State v. Van Camp*, 2013 WI App 94, ¶ 13, 349 Wis. 2d 528, 835 N.W.2d 292. The court stated that Wisconsin does not use an objective approach, but rather uses a *subjective* approach that focuses on "whether the police conduct affected or changed the particular defendant's state of mind." *Id.* (citing *State v. Saternus*, 127 Wis. 2d 460, 470-71, 381 N.W.2d 290 (1986)). The court held that appellate counsel was not ineffective for failing to raise a legal theory that had been expressly rejected in Wisconsin.

Van Camp's reliance on *Russell* is faulty for reasons explained by the majority in that case: the entrapment "defense is not of a constitutional dimension." *Russell,* 411 U.S. at 433. Because the entrapment defense is not rooted in the Constitution, Wisconsin has the power to set a different standard for the entrapment defense than other jurisdictions. *See Hawthorne v. State*, 43 Wis. 2d 82, 168 N.W. 85 (1969); *State v. Hochman*, 2 Wis. 2d 410, 413, 86 N.W.2d 446 (1957). In Wisconsin, a person is not entrapped simply because police engage in a drug deal. *State v. Hilleshiem,* 172 Wis. 2d 1, 9, 492 N.W.2d 381 (Ct. App. 1992).

Wisconsin uses the following analysis in determining whether entrapment has occurred:

> [The Wisconsin Supreme] court has adopted the "subjective"
> test—whether the police conduct affected or changed the

> particular defendant's state of mind—as contrasted with the "objective" test, which focuses not on the state of mind of the particular defendant but, rather, upon the question of how the reprehensible police conduct in inducing the crime would affect the intent of a person in the circumstances whether predisposed or not.
>
> This court has thus far eschewed emphasizing one policy rationale for the entrapment rule—that mere outrageousness of governmental conduct alone suffices to let the accused, predisposed or not, to go free.

*Saternus*, 127 Wis. 2d at 460.

Given Wisconsin's use of the subjective test, the court of appeals properly applied the *Strickland* test when it determined that appellate counsel was not ineffective for failing to argue that an objective test should apply. I will deny this habeas petition on this claim.

### 2. Failure to argue Van Camp was not predisposed

Van Camp contends that appellate counsel was ineffective for failing to raise issues Van Camp believes prove he was not predisposed to purchase cocaine. In Wisconsin, if a defendant makes a showing that the police induced him to commit the crime, the state has the burden to show that the inducement either was not excessive or that the defendant was predisposed to commit the crime before being induced. Wis JI-Criminal 780. That instruction states that, with regard to whether the defendant was predisposed to commit the crime, the jury may consider "the defendant's personal background, the nature and extent of any inducements of the law enforcement officer, and all the other circumstances relating to the alleged offense." *Id*.

11

Van Camp contends that the informant's badgering by phone induced Van Camp to purchase to cocaine when he was not otherwise predisposed. The records show that the informant called Van Camp repeatedly on several occasions to set up a deal, whereas "there were no repeated phone calls from the defendant to the confidential government informant." Dkt. 1, at 23. Van Camp's appellate counsel did not argue that the phone records should have been given to the jury during deliberations, which Van Camp says constitutes ineffective assistance.

The court of appeals concluded that appellate counsel was not ineffective on this issue. It reasoned that the telephone records were admitted into evidence, published to the jury, and argued to the jury by trial counsel. The court concluded that the jury heard the evidence about the phone calls and it determined Van Camp was not entrapped.

I conclude that the court of appeals correctly applied *Strickland* on this issue. The jury heard ample evidence of the phone calls. Both the informant and Van Camp testified concerning the content of the phone calls. The informant testified that the exchange of calls was to set up delivery of the drugs. He also testified that he had sold drugs to Van Camp on three prior occasions. Van Camp testified that *his* calls to the informant were to discuss topics related to Van Camp's repair business, but *the informant's* calls to Van Camp were to pressure him to purchase cocaine. The phone records would show the number of calls, but they could not show the purpose or content of those calls. Giving the phone records to the jury would have added nothing to the case the jury had already heard.

Although Van Camp does not develop this issue in his briefing, at the court of appeals he also argued that his medical records should have been admitted into evidence because the records would have shown that the cocaine was for personal use—not for dealing. Thus, he

12

would not be predisposed to have the intent to deliver drugs. Van Camp testified that, about ten years prior, he suffered a gunshot to the head and had difficulty hearing as a result.

Even though the medical records were not admitted into evidence, Van Camp and his ear doctor were allowed to testify. At trial, two officers testified, based on their narcotics investigation experience, that 250 grams of cocaine is consistent with distribution rather than personal use. Sergeant Poteat testified that 250 grams was approximately 2,500 uses. The informant testified that Van Camp purchased cocaine three times prior. The jury heard evidence that several small baggies of cocaine were found in Van Camp's SUV in addition to the block of cocaine that he purchased. The court of appeals determined that counsel was not ineffective for failing to argue that Van Camp's medical records would have shown that Van Camp had no predisposition to purchase cocaine for distribution, because Van Camp did not explain how that testimony could have promoted his personal-use theory.

I conclude that the court of appeals did not unreasonably conclude that the medical records would not have addressed the entrapment defense, and that, therefore, appellate counsel was not ineffective.

## B.  Entrapment jury instruction

Van Camp contends that the trial court gave an outdated, inaccurate entrapment jury instruction, and that appellate counsel was ineffective for failing to press the issue. Van Camp contends the trial court used Wisconsin Criminal Jury Instruction 780A, which was withdrawn as a recommended jury instruction after a Wisconsin Supreme Court case disavowed the instruction. *Saternus*, 127 Wis. 2d at 481 (The Court opined in a footnote that "JI-780A is not at issue in the case before us . . . [but] the instruction does not reflect the decisions as determined by *Hawthorne* and other holdings of this court."). The result of the

13

mistake, according to Van Camp, is that the burden on Van Camp to prove entrapment was higher than it should have been. Van Camp cites Ninth Circuit cases stating that little evidence is necessary to show inducement in the entrapment defense analysis. Dkt. 30-1, at 16; *see United States v. Kessee*, 992 F.2d 1001, 1003 (9th Cir. 1993); *United States v. Sotelo-Murillo*, 887 F.2d 176 (9th Cir. 1989). Van Camp argues that "[t]he burden is not on the defendant to prove by the (Greater Weight) of the credible evidence of Inducement or Entrapment." Dkt. 30-1, at 16.

The court of appeals rejected Van Camp's argument that counsel was ineffective on the jury instruction issue. The court analyzed the trial transcript and determined that the usual entrapment instruction, Wis JI-Criminal 780, was used at trial, not 780A.

The court of appeals did not unreasonably apply *Strickland* with regard to the jury instruction use because Van Camp's version of events is easily disproved by looking at the record. The trial court gave instruction 780. Dkt. 23, at 182-83. If Van Camp was confused about the instruction numbering and rather means to argue that instruction 780 was improper, he is also incorrect. The Wisconsin Supreme Court approved this instruction as a correct analysis of entrapment law. *Saternus*, 172 Wis. 2d at 472. The burden of proof used in the Ninth Circuit cases, as proposed by Van Camp, is inapplicable in Wisconsin. There was no error for appellate counsel to raise regarding the entrapment jury instruction, so I will deny habeas relief on this claim.

## C.  Cocaine chain of custody and admissibility objections

Van Camp contends that appellate counsel was ineffective for failing to more vigorously argue deficiencies with the chain of custody and admissibility of the cocaine. Van Camp contends the block of cocaine should not have been admitted because of documented

weight discrepancies, chain-of-custody issues, and the difference in the shape of the cocaine sold to him and the cocaine at trial. Van Camp also contends the five individual baggies of cocaine recovered in the reverse sting should not have been admitted into evidence because there were discrepancies between the weights reported by the officers that recovered the cocaine and the crime laboratory measurements.

### 1. Block of cocaine

Van Camp contends that the cocaine produced at trial was not proven to be the cocaine provided by the informant, not only because the chain of custody was broken, but also because of other discrepancies in the cocaine evidence. I take Van Camp to be arguing that the block of cocaine was inadmissible, and that appellate counsel was ineffective by failing to raise all of the issues with the block of cocaine in addition to the chain-of-custody issues litigated in the direct appeal.

The cocaine used in the block was first obtained by the government in 2004. In 2004, when the cocaine was tested, it weighed slightly less than 252 grams and it was in six separate heat-sealed plastic bags. But immediately after the sting operation, the total cocaine weighed a little more than 249 grams, a difference of almost three grams. Van Camp argues that this shows the substance sold to him was never proven to be cocaine.

Similarly, Van Camp argues that the explanation given by police as to the formation of the block was not sufficient to be admissible: "You can not [sic] take six different items or six plastic baggies of all white chunky materials to make one block of cocaine. It is physically impossible." Dkt. 30-1, at 17. Van Camp argues that counsel was ineffective for not arguing that six bags cannot be combined into one block.

15

Van Camp also argues that there was an insufficient chain of custody of the cocaine from the time the crime laboratory turned it over in 2004 through the trial. Van Camp points out that the informant had the drugs for more than 20 minutes on the night of the reverse sting. Van Camp also asserts that the state failed to prove the authenticity of the drugs. The contents were tested and proven to be cocaine in 2004, but the packages were not retested after Van Camp's arrest.

Finally, Van Camp asserts that Lieutenant Van Lanen of the Brown County Drug Task Force was forced to resign for "lying in his testimony in a federal drug case" in 2009. Van Camp uses this fact to cast doubt on the entire Brown County Drug Task Force's investigation, but he provides no evidence of malfeasance or even a hint of what he believes Van Lanen might have done to interfere with the investigation.

The court of appeals determined that the trial court correctly admitted the block of cocaine because there was "evidence sufficient to support a finding that the matter in question is what the proponent claims," Wis. Stat. § 909.01. The court cited several facts supporting the finding that a sufficient chain of custody existed. Crime Analyst Nied testified that, after testing the cocaine in 2004, he turned over the cocaine to the Brown County Task Force. Task force officers testified that the cocaine remained locked in the evidence locker until the evidence sergeant gave the cocaine to Agent Wanta to use in this case. Wanta testified that he gave the cocaine to the informant after searching him for contraband. The informant testified that he sold the cocaine to Van Camp and that he was searched after the sale. Officer Hackett testified that he recovered the cocaine from Van Camp's SUV and then returned it to the evidence locker prior to its use at trial. Finally, the officers identified the cocaine at trial as the same from the reverse sting.

16

The court of appeals held that appellate counsel was not ineffective for failing to litigate the admissibility of the cocaine along with the other chain-of-custody arguments counsel did make on appeal, because the evidence provided at trial could not establish inadmissibility as a matter of law. Given the low threshold for admissibility, it was reasonable to conclude that admissibility was not a winning issue on appeal. The court's decision was well within the "fairminded jurist" standard I must apply in this habeas action, so Van Camp cannot prevail on this part of his claim.

### 2. Individual baggies of cocaine

Van Camp contends that the cocaine baggies should not have been admitted into evidence. Officers recovered five small baggies of cocaine from his vehicle. After the sting, officers weighed the baggies. But when the crime laboratory weighed the baggies, there were discrepancies in the weights compared to the police's measurements.

The court of appeals determined that the weight discrepancies in the individual baggies of cocaine went to the persuasiveness of the evidence rather than the admissibility. The state provided a sufficient chain of custody of the drugs, and the officers identified the cocaine at trial as the same recovered from Van Camp's SUV. Moreover, the jury was allowed to hear about the weight discrepancies from the defense, and in finding Van Camp guilty, the jury was persuaded by the officer's explanation that a typographical error was made while weighing one of the baggies. The court of appeals relied on Wisconsin chain-of-custody law to determine that the jury's decision to rely on the evidence was reasonable:

> The law with respect to chain of custody requires proof sufficient "to render it improbable that the original item has been exchanged, contaminated or tampered with." *B.A.C. v. T.L.G.*, 135 Wis. 2d 280, 290, 400 N.W.2d 48 (Ct. App. 1986). "A perfect chain of custody is not required." *State v. McCoy*, 2007 WI App 15, ¶ 9, 298 Wis. 2d 523, 728 N.W.2d 54.

> "Alleged gaps in a chain of custody "'go to the weight of the
> evidence rather than its admissibility.'" *Id*. (quoting *United States
> v. Lott*, 854 F.2d 244, 250 (7th Cir. 1988)).

Van Camp, 2013 WI App 94, ¶ 19.

As with its determination about the block of cocaine, I conclude that the court of appeals did not unreasonably apply *Strickland* on this issue. Although the weight discrepancies were significant, the court reasonably relied on Wisconsin precedent to determine that a chain of custody need not be perfect, and thus admissibility would not be a productive issue to raise along with the other chain-of-custody arguments raised on appeal. The weight discrepancies went to the persuasiveness of the evidence rather than admissibility, and trial counsel was allowed to argue the weight discrepancies to the jury. Van Camp fails to show that no fairminded jurist could agree with the court of appeals's analysis of this issue. I will deny this habeas claim.

## D. Electric weapon conviction

Van Camp contends that appellate counsel was ineffective for failing to argue that he was incorrectly convicted of possession of an electric weapon. Van Camp argues that he was fully in compliance with Wis. Stat. § 941.295—the possession-of-electric-weapons statute, because he had a permit and the weapon was in a case. Van Camp attached Wis. Stat. § 941.295 (2013) to his petition. Van Camp first raised this issue in an attachment to his habeas petition; consequently, no previous court has analyzed the issue. This means he has procedurally defaulted the claim.

Because Van Camp procedurally defaulted by failing to raise the issue in the Wisconsin courts, Van Camp must demonstrate (1) cause for the default and actual prejudice from failing to raise the claim as required or (2) that enforcing the default would lead to a

18

"fundamental miscarriage of justice." *Steward v. Gilmore*, 80 F.3d 1205, 1211-12 (7th Cir. 1996)(quoting *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A fundamental miscarriage of justice results only where the petitioner presents evidence showing that he is "actually innocent" of the charges against him. *Dretke v. Haley*, 541 U.S. 386, 393 (2004). Van Camp relies on the "actual innocence" exception to a procedural default, arguing that he did not commit the crime as defined in the 2013 statue.

But Van Camp was convicted in 2008. Under the 2008 version of the statute, there were limited circumstances in which a person could carry an electric weapon on their person, none of which applied to Van Camp's circumstances. *Compare* Wis. Stat. § 941.295 (2008), *with* Wis. Stat. § 941.295 (2013). The law was revised after Van Camp's conviction. *See* 2011 Wis. Act 35.[3] Under the law that was in effect when Van Camp committed the crime and was convicted, he did not fit any of the exceptions to the ban on electric weapons possession. Therefore, Van Camp is not actually innocent of possession of an electric weapon. I will deny his habeas petition on this claim.

### E.  Trial counsel

On each of his claims, Van Camp, at various points in his petition and briefing, raises claims of ineffective assistance of trial counsel. But he previously disclaimed those claims in litigating his postconviction motion. In his reply brief in support of his appeal of the ruling on his postconviction motion, Van Camp wrote:

> To clarify for the record, all claims of ineffective assistance of counsel, both trial and appellate, are ineffective assistance of

---

[3] The 2008 version of Wis. Stat. § 941.295 contained few exceptions to the electric weapons ban only for peace officers, armed forces personnel, department of corrections personnel, and manufacturers. The newer version cited by Van Camp contains numerous exceptions under which Van Camp may have fallen had the 2013 version been applicable to his circumstances.

> appellate counsel claims for failing to raise the issues, or failing
> to raise the issues correctly on direct appeal.[4]

Because of this statement, the court of appeals did not address ineffective assistance of trial counsel claims. Dkt. 11-12, at 5 n.6. A state court ruling that a petitioner abandoned certain arguments on appeal usually means that those claims are procedurally defaulted.

Van Camp does not address procedural default with regard to those issues, but even if I concluded that the issues were not procedurally defaulted, it is clear from the analyses above that he could not succeed on ineffective assistance of trial counsel claims for much the same reason he fails on the appellate counsel claims: Van Camp's claims are largely based on incorrect interpretations of Wisconsin entrapment law and the rules of evidence. Counsel was not ineffective for failing to pursue those incorrect theories at trial. I will deny the petition for habeas relief on any ineffective assistance of trial counsel claims.

## F.  Certificate of appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires him to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Although the rule allows me to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, I conclude that Van Camp has not made a showing, substantial or

---

[4] His reply brief appears to be largely a copy of a motion for reconsideration filed in the circuit court, with Van Camp typing over portions of it.

otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court. Because reasonable jurists would not otherwise debate whether a different result was required, I will not issue him a certificate of appealability.


ORDER

IT IS ORDERED that:

1. Dennis Van Camp's petition for a writ of habeas corpus under 28 U.S.C. § 2254, Dkt. 1, is DENIED, and this case is DISMISSED. The clerk of court is directed to enter judgment for respondent and close this case.

2. A certificate of appealability is denied. If Van Camp wishes, he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Entered March 30, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

21